HOUDEK *v.* WHITNEY.

ADVERSE POSSESSION—QUIETING TITLE—EVIDENCE HELD TO SHOW
PERMISSIVE USER.
  In a suit to quiet title to land, based on title in plaintiffs'
    grantors by adverse possession, defendant's claim that he
    agreed to such possession and occupation on condition that
    the taxes be paid, *held,* established by the record.

Appeal from Leelanau; Gilbert (Parm C.), J. Submitted June 20, 1928. (Docket No. 111, Calendar No. 33,849.) Decided October 1, 1928.

Bill by Joseph Houdek and another against Edwin D. Whitney to quiet title to land. From a decree for plaintiffs, defendant appeals. Reversed, and bill dismissed.

*C. L. Dayton* and *C. H. Thomas,* for plaintiffs.

*Edmund E. Shepherd,* for defendant.

SHARPE, J. The bill of complaint herein was filed by the plaintiffs to quiet their title to a strip of land along the lake shore 500 feet in width off the west side of lot 2, in section 24, town 31 north, range 12 west, in the county of Leelanau.

On October 11, 1900, the defendant purchased this land from Wilbur F. Gill and Howard E. Gill, the owners thereof, as appears by the record title thereof, and received a quitclaim deed from them. At the same time he obtained a quitclaim deed from Wenzel Houdek, to whom the Gills had contracted to sell lot 2. These deeds were both duly recorded. On

November 12, 1901, the Gills deeded lot 2, including the strip in dispute, to Wenzel Houdek and his wife. This deed was not recorded until February 16, 1926, on which day Wenzel Houdek and his wife deeded entire lot 2 to the plaintiffs herein. The bill of complaint was filed on the same day. The plaintiffs allege therein, on information and belief, that the defendant had conveyed the land to the Gills, but that there was no record thereof. No proof was offered that such a conveyance was ever made. They also claimed title by adverse possession. The trial court found that plaintiffs' grantors had acquired title by adverse possession, and so decreed. The defendant has appealed.

The defendant did not visit this land from the time he purchased it until 1923. He had been in ill health and out of the State from 1903 until 1922. It is his claim that at the time of his purchase he made an arrangement with Wenzel Houdek, whose contract it will be recalled covered this land, that he should have the use of it on payment of the taxes thereon. This is denied by Houdek. It does appear, however, that lot 2 and the 80 acres adjoining were assessed as one parcel to Houdek from 1900 to and including 1926, and that he paid the taxes thereon. The entire tax varied from $1.15 in 1900 to $11.59 in 1926. There was no clearing at that time, nor is there now, on this strip, no valuable timber, just small brush, and cattle running at large had free access to it for pasture. There is proof that Houdek built a fence around at least a part of the land in dispute to keep the cattle out. The land, mostly hills and sand, was not suitable for farming except the natural pasturage which grew thereon. It had little, if any, real value at the time defendant purchased it. His purchase was made in anticipa-

tion of its becoming valuable as lake frontage, as it now is.

A careful reading of this record satisfies us that the arrangement at the time of defendant's purchase that Wenzel Houdek should have the right to occupy the land in dispute in consideration of the payment of the taxes assessed thereon, as claimed by defendant in his answer and as testified to by him on the trial, was in fact made. Defendant knew at the time of his purchase that the land had no appreciable value. All the witnesses are agreed that it had not. He paid each of the grantors $20 therefor. He was then employed in the advertising department of the Michigan Central Railroad Company, and had in view the establishment of a resort on lands along the lake shore. He at the same time purchased other frontage, but surrendered his contracts therefor. This he paid for in cash. Had it been assessed to him, the valuation placed thereon would have been small indeed. The arrangement as to taxes was not an unusual one for the parties to enter into. There was some pasturage on the land, and this, in view of the tax paid, more than recompensed Wenzel Houdek for such payment. That Houdek permitted it to be assessed to him, and that his other land was included in the description thereof, is corroboration of defendant's claim in this respect. Had such an arrangement not been made, it is improbable that Houdek would have allowed such assessment to stand and that he would have paid the tax from the date of defendant's purchase. While in California for several years, defendant had his father-in-law, a former auditor general of this State, write to the officials here about the taxes, and in that way knew that they were being paid. The defendant testified that in the fall of

1923 he visited this land in company with George Bourdo, an old resident of the township; that he then saw Wenzel Houdek and talked with him about the best way to get a road to the land in question, and that Houdek then made no claim that the land belonged to him. Bourdo also testified that such a visit was made, and that defendant talked with Houdek about a road to the land. Houdek testified that he had no recollection of this visit of defendant or of the conversation then had, although he had known Bourdo since boyhood. We feel constrained to hold that the possession of Wenzel Houdek was retained by him under this arrangement, and was not adverse to the defendant.

The conclusion thus reached disposes of the case and renders it unnecessary to discuss the other questions presented.

The decree will be reversed and set aside, and one may be entered in this court dismissing plaintiffs' bill, with costs of both courts to defendant.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.